The opinion of the Court was drawn up by
Cutting, J.
The plaintiff owns the south, and the defendant the north half of township numbered twenty-one, Middle Division, in Hancock County, and the principal controversy is, as to the divisional line.
Both parties claim under the devisees in trust of the estate of the late William Bingham; the defendant by a deed to his father, James Grant, deceased, (under whom he claims as heir,) prior in time to that of the plaintiff, whose deed describes his northern boundary (the line in dispute) as identical with the southern boundary of the defendant’s grant. So that the principal inquiry involves the construction of certain portions of Grant’s deed.
That deed, after describing the exterior lines of the township, concludes as follows: viz. — '"The part of said township intended to be conveyed by this deed, is the north half thereof, reserving therefrom two lots of three hundred twenty acres each, for public uses in said town, three lottery lots containing eight hundred acres, and six lots of one hundred sixty acres each, sold to settlers, leaving and containing nine thousand one hundred and twenty acres, more or less, according to a survey and plan of said town by Peters and Dodge, surveyors.”
It is contended by defendant’s counsel, that the reference to the survey and plan was confined to the reservations. Had the acres in the reservations, instead of those conveyed, been referred to, there would have been force in the argument. But the question returns, was there a survey and *369 plan of Peters and Dodge existing at the time of the conveyance ?
Inasmuch as the defendant was entitled by his deed to the north half of the township, if no plan had been mentioned, and the plaintiff seeks to diminish that quantity by the exhibition of a plan, the burden is on him to prove it to be the plan refei’red to in the deed. This can be done by parole testimony, since the plan was not named as a matter of record. There was no survey and plan made jointly by Peters and Dodge exhibited, or any proof that such ever existed, but the contrary. Still, there must have been some survey and plan recognized by both parties to the conveyance, although, perhaps, designated by a wrong name. Hence, we may, as between these litigants, resort to the parol proof in order to ascertain that factl Upon this subject, the testimony of Addison Dodge is, that, in August, 1852, (which was prior to the delivery of the deed, although antedated for cause as explained by other portions of the evidence,) he surveyed the township, the exterior lines of which were originally run — east line by John Peters, senior — south and north lines bj John Peters, jr. — the west line, north half, by James Peters — the south half by John Peters — that he always had their field notes when he retraced their lines, which were kept at Ool. Black’s office— that his directions were, invariably, to take Peters’ minutes, examine them, and to follow their lines — that by the request of Black he run the divisional line parallel with and three miles south of the north line of the township, and, by bushing and spotting, well defined it — that soon after, he made a plan of his survey and delivered it to Black, (which plan was introduced and identified by him at the trial,) — that ho made the divisional line and projected on the plan the other lines from Peters’ survey. And George 8. Smith swears that he wrote the deed as dictated by Black, this plan being then in his office. Other deeds were introduced, made about the same time by Black, as agent of the proprietors, of portions of other townships, as also the plaintiff’s *370 deed, referring to the survey and plan of John Peters and "Addison Dodge and Peters and Dodge; whereas, Dodge states that he never surveyed conjointly with either Peters, but only run interior lines in other townships as in this and made and returned similar plans. Upon such evidence, not materially impeached, we, to whom was referred the question of fact, are of the opinion that the survey and plan of Dodge was the one referred to in the deed. It was virtually the survey and plan of Peters and Dodge, not jointly, it is true, for the exterior lines were run and planned by Peters, and the interior by Dodge, but the parties might well characterize their several operations as a joint one, especially when exhibited on one plan.
There has been no suggestion of fraud, (and the reputation of the proprietor’s agent for honor and integrity forbid the idea,) and, had the township been six miles square, as it was supposed to be, the defendant would have received his just proportion, or, had it exceeded six miles from east to west, as it did from north to south, he would have been entitled to the surplus, in the same manner as the plaintiff now is in the diminution of that distance and the excess in the other direction. As it is, the defendant’s loss is less than two hundred acres, which, by the immutable rules of law, he must endure, rather than to lose the whole hereafter by an unauthorized and arbitrary change of long and well established legal principles.
But, assuming that the Court might arrive at the foregoing conclusion, it is further urged by defendant’s counsel, that the plaintiff has no cause of action, for his deed gives him no title to the premises on which the alleged trespass was committed. Or, in other words, that his deed conveys. only the south half of the south half of the township, leaving a quarter of the township south of the divisional line still in the trustees.
It is true that the deed conveys the south half of a lot of land in the township — "butted and bounded as follows”— describing the whole south half of the township *371 and np to the south line of land deeded to Grant. But the boundaries must refer to the land conveyed and not to one half of it. If the construction be doubtful, it should be against the grantor and in favor of the grantee. Besides, it appears that the plaintiff was in possession for years previous to the defendant’s alleged trespass by lumbering thereon, up to the line, which gives a good title as against one who has none.

According to the agreement of the parties, the Defendant is to he defaulted, and heard in damages.

Tenney, C. J., Bice, Appleton, May and Kent, JJ., concurred.